WALKER et al. v. STEPHENS et al.

No. 8774.   August 13, 1932.

*J. A. Hixon* and *G. Y. Harrell,* for plaintiffs in error.

*Jule Felton* and *W. W. Dykes,* contra.

BELL, J. (After stating the foregoing facts.) By the allegations of the petition the county commissioners issued to M. A. Walker, an attorney at law, two vouchers for the aggregate sum of $700 to pay for professional services rendered by Walker in behalf of the county. The plaintiffs as taxpayers are seeking an injunction to prevent the payment and collection of these vouchers by the county treasurer and Walker respectively. The additional prayer against the county commissioners to prevent the issuance of such vouchers could hardly be granted, because it affirmatively appears from the petition that the vouchers had been issued and were in the hands of the defendant Walker before the suit was filed. It is apparent from the allegations that the word "vouchers" as employed in the petition was intended to describe what are commonly referred to as county orders or county warrants. The plaintiffs are seeking to enjoin the collection and payment of these warrants upon the following grounds: (1) The services rendered by Walker as an attorney at law were not worth more than $100, and the amount

410

for which warrants were issued was excessive and unreasonable. (2) The contract, if any, between Walker and the county commissioners for the rendition of the services was not in writing and recorded upon the minutes of the county commissioners, as required by law. (3) The attorney was not content to serve the county alone, but divided his allegiance between the county and the surety companies, thus attempting improperly to serve two masters. (4) The warrants were intended to be paid in the year 1930, and no provision was made in the tax levy for that year or otherwise for their payment. By reference to the petition, it is seen that the foregoing were the only grounds urged as reasons why the injunction should have been granted.

By special act of the legislature the fiscal affairs of the County of Webster are in charge of a board of county commissioners. Ga. L. 1872, p. 479; Ga. L. 1920, p. 641. By the act of 1872 authority is conferred upon the board of commissioners to audit and settle all claims against the county. This is in accordance with the general law. Section 410 of the Civil Code of 1910 is to the effect that, unless otherwise provided by law, the ordinaries must audit all claims against their respective counties, and every claim or such part as may be allowed must be registered, and he or his clerk must give the claimant an order on the county treasurer for the same. Section 4796 provides that the ordinary, when sitting for county purposes, "shall have original and exclusive jurisdiction over" specified subject-matters, one of which is "examining, settling, and allowing all claims against the county." The authority conferred by these sections upon the ordinary must, since the passage of the act of 1872, be exercised in Webster County by the board of county commissioners. *Dyer* v. *Martin*, 132 *Ga.* 445, 447 (64 S. E. 475); *Commissioners* v. *Curry*, 154 *Ga.* 378 (114 S. E. 341). The petition showed upon its face that Walker as an attorney at law rendered for the county professional services of some value, and that in so doing he was acting at the instance and request of the county authorities. The matters in which the services were rendered involved large sums of money and were of great importance to the county. The occasion required the exercise of skill and knowledge, and entailed considerable responsibility. It is legally possible for the county to become liable for the services of an attorney. The petition shows upon its face that the defendant Walker

presented a bill for $800 for the services to which reference has been made. This account was considered at a regular meeting of the commissioners. The board of commissioners was the proper tribunal to pass upon the correctness of the account. According to the allegations, there was in fact a controversy about it, and the commissioners determined the value of the attorney's services and agreed to pay a certain amount. In other words, in the exercise of their proper function they examined, settled, and allowed the claim to the extent of $700 and issued vouchers or county warrants therefor. The courts can not override the conclusion of the county commissioners in fixing the value of the attorney's services, unless the amount allowed was so excessive as to show an abuse of discretion upon the part of such commissioners. The petition fails to show any abuse of discretion in the matter, and therefore alleges no cause for judicial interference with the action of the commissioners in determining the amount to be paid for such services. *Van Valkenburg* v. *Stone*, 172 *Ga.* 642 (2), 651 (158 S. E. 419).

The petition alleges that the commissioners employed Walker, an attorney at law, to represent them as county attorney, by advising them and representing the county generally in all matters in which the interests of the county might be affected in any manner. Upon a fair interpretation of these allegations, construed as they must be most strongly against the plaintiff, it affirmatively appears that the county commissioners had appointed Walker as county attorney under the implied authority conferred by law upon such commissioners. *Templeman* v. *Jeffries*, 172 *Ga.* 895 (159 S. E. 248). We can see no reason why the county might not appoint a qualified practitioner of the law as county attorney, and yet leave the matter of compensation for services to be determined from time to time according to their actual worth in view of the circumstances. See, in this connection, *Cloud* v. *County of Taliaferro*, 138 *Ga.* 214, 218 (74 S. E. 1074); *Butts County* v. *Jackson Banking Co.*, 129 *Ga.* 801 (3) (60 S. E. 149, 15 L. R. A. (N. S.) 567, 121 Am. St. R. 244); *Decatur County* v. *Roberts*, 159 *Ga.* 528, 534 (126 S. E. 460). In such a case, the relation between the county and the attorney would not rest upon contract, but would arise from the appointment of the attorney as a public officer, and the transaction would not fall within the purview of section 386 of the Civil Code of 1910, which requires all contracts entered into by the ordinary

or county commissioners with other persons in behalf of the county to be in writing and to be entered upon the minutes of the ordinary or county commissioners. This conclusion is not in conflict with the decision in *DeVaughn* v. *Boolen,* 146 *Ga.* 836 (92 S. E. 629), as explained in *Templeman* v. *Jeffries,* supra.

With regard to dual agency, the allegations were insufficient to show that payment for the services of the attorney should be denied upon this ground. Where dual agency on the part of an agent is relied on to defeat his claim for compensation, it is necessary to show not only the fact of dual agency but also want of knowledge of this fact by the objecting party. *Winer* v. *Flournoy Realty Co.,* 27 *Ga. App.* 87 (3) (107 S. E. 398) ; *Richardson* v. *DuPree,* 32 *Ga. App.* 3 (4) (122 S. E. 707) ; *Pope* v. *Harper,* 40 *Ga. App.* 573 (150 S. E. 470).

What is said in the preceding division will dispose of all questions raised, except the contention that payment of the county warrants should be enjoined because there was no fund from which they could have been paid. This point will now be considered. The petition alleges that the warrants were drawn on the general fund of the county. Such a fund may be raised by taxation under section 513, par. 9, providing for the levying of taxes "to pay any other lawful charge against the county." *Commissioners of Habersham County* v. *Porter Mfg. Co.,* 103 *Ga.* 613 (4) (30 S. E. 547). Such a fund may also be created by the lapsing of other funds levied for specific purposes, after all demands chargeable to such specific funds have been paid. The surplus in such case becomes a general fund which may be applied toward the payment of any legitimate liability against the county. *Butts County* v. *Jackson Banking Co.,* 136 *Ga.* 719 (4) (71 S. E. 1065). The fact that the county tax levy for the year 1930 did not purport to levy a tax for the creation of a general fund would not prove that the county did not have a general fund from which this indebtedness could be paid. For aught that appears, such a fund may have existed by balances brought forward from previous years; and if so, it is immaterial that the county may not have levied a tax during the current year for the purpose of paying this claim.

Moreover, even if the county may have no general fund from which to pay this indebtedness, this would afford no reason for enjoining the payment and collection of the orders or county war-

rants issued by the commissioners therefor. Section 582 of the Civil Code of 1910, as amended by the act of July 24, 1920 (Ga. L. 1920, p. 65), clearly contemplates the existence of county orders drawn upon funds not in esse, and the warrants are not for that reason illegal, but may be presented .to the county treasurer and marked presented and not paid for want of funds, after which they shall bear interest at the legal rate from the date of such entry of presentation and nonpayment. The petition does not allege that the warrants are about to be paid from some fund out of which their payment would be improper or unlawful, and the presumption is that the county treasurer will pay the warrants only out of the proper fund when and if such fund should ultimately come into existence. See, in this connection, *Maddox* v. *Anchor Duck Mills,* 167 *Ga.* 695 (2) (146 S. E. 551).

Upon the whole case we conclude that the petition failed to set forth any cause for the grant of an injunction or for the grant of any other relief either legal or equitable, and that the trial judge erred in not sustaining the general demurrer and dismissing the petition.          *Judgment reversed.   All the Justices concur.*